# EXHIBIT A

# COMMONWEALTH OF VIRGINIA



PORTSMOUTH CIRCUIT COURT
Civil Division
1345 COURT STREET
PORTSMOUTH VA
(757) 393-8671

Summons

To: QUEEN OF VIRGINIA SKILL & ENTE
GUY M. HARBERT, III ESQUIRE
REGISTERED AGENT
10 FRANKLIN RD. SE.
SUITE 900
ROANOKE VA 24011

Case No. 740CL22001902-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Monday, April 25, 2022

Clerk of Court: CYNTHIA P. MORRISON

by _____
(CLERK/DEPUTY CLERK )

Instructions:


Hearing Official:



Attorney's name:    SLAVEN, RONALD D; JR

# COMMONWEALTH OF VIRGINIA



PORTSMOUTH CIRCUIT COURT
Civil Division
1345 COURT STREET
PORTSMOUTH  VA
(757) 393-8671

Summons

To: POM OF VIRGINIA, LLC
GUY M. HARBERT, III ESQUIRE
REGISTERED AGENT
10 FRANKLIN RD. SE.
SUITE 900
ROANOKE VA 24011

Case No. 740CL22001902-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Monday, April 25, 2022

Clerk of Court: CYNTHIA P. MORRISON

by _____
(CLERK/DEPUTY CLERK)

Instructions:


Hearing Official:




Attorney's name:     SLAVEN, RONALD D; JR



## COMMONWEALTH *of* VIRGINIA

POST OFFICE BOX 2452

### *Secretary of the Commonwealth*

RICHMOND, VIRGINIA 23218-2452

## NOTICE OF SERVICE OF PROCESS

Pace-O-Matic, Inc.
3450 Corporate Way
Suite A
Duluth, GA 30096
United States

5/11/2022

David J. Bond

vs.

Pace-O-Matic, Inc.

**Summons and Complaint**

Dear Sir/Madam:

You are being served with the enclosed notice under section 8.01-329 of the Code of Virginia which designates the Secretary of the Commonwealth as statutory agent for Service of Process.

If you have any questions about the matter, PLEASE contact <u>the CLERK of the enclosed/below mentioned court</u> or any attorney of your choice. <u>Our office does not accept payments on behalf of debts.</u> The Secretary of the Commonwealth's ONLY responsibility is to mail the enclosed papers to you.

COURT:

Portsmouth Circuit Court
1345 Court Street
Suite 101
Portsmouth, VA 23704

Service of Process Clerk
Secretary of the Commonwealth's
Office

**AFFIDAVIT FOR SERVICE OF PROCESS ON THE SECRETARY OF THE COMMONWEALTH**

Case No. .......... CL22-1902-00 ..........

Commonwealth of Virginia    VA. CODE §§ 8.01-301, -310, -329, 55-218.1; 57-51

.......... Portsmouth .......... Circuit Court

| David J. Bond | v. | Queen of Virginia Skill & Entertainment, LLC c/o |
|---|---|---|
| c/o Frank Kilgore, Esquire PO Drawer 1210 | | Guy M. Harbert, III, R. A. 10 Franklin Rd SE, Ste 900 |
| St. Paul VA, 24283 | | Roanoke VA, 24011 |

TO THE PERSON PREPARING THIS AFFIDAVIT: You must comply with the appropriate requirements listed on the back of this form.

Attachments:   ☒ Summons and Complaint                ☐ Notice
                                                               ☐

I, the undersigned Affiant, state under oath that
☐ the above-named defendant      ☒ .......... Pace-O-Matic, Inc. ..........

whose last known address is   ☐ same as above  ☒   3450 Corporate Way Suite A Duluth GA 30096

1. ☒ is a non-resident of the Commonwealth of Virginia or a foreign corporation and Virginia Code § 8.01-328.1(A) applies (see NON-RESIDENCE GROUNDS REQUIREMENT on page 2).

2. ☐ is a person whom the party seeking service, after exercising due diligence, has been unable to locate (see DUE DILIGENCE REQUIREMENT ON BACK)

.......... is the hearing date and time on the attached process or notice (if applicable)

5/4/22
DATE         ☐ PARTY ☒ PARTY'S ATTORNEY ☐ PARTY'S AGENT ☐ PARTY'S REGULAR AND *BONA FIDE* EMPLOYEE

State of  Virginia    ☒ City ☐ County of  Chesapeake

Acknowledged, subscribed and sworn to before me this day by  Ronald D. Slaven, Jr.
                                                                                                    PRINT NAME OF SIGNATORY
5/4/2022              Avis M. Vandegrift-Fish
DATE                        ☐ CLERK    ☐ MAGISTRATE   ☒ NOTARY PUBLIC
                           Notary Registration No. .. 7621770 .... My commission expires: 4/30/2026

*(notary seal: AVIS M. VANDEGRIFT-FISHER / NOTARY PUBLIC / REG # 7621770 / MY COMMISSION EXPIRES 4/30/2026 / COMMONWEALTH OF VIRGINIA)*

☐ Verification by the clerk of court of the date of filing of the certificate of compliance is requested. A self-addressed stamped envelope was provided to the clerk at the time of filing this Affidavit.

NOTICE TO THE RECIPIENT from the Office of the Secretary of the Commonwealth of Virginia:
    You are being served with this notice and attached pleadings under Section 8.01-329 of the Code of Virginia which designates the Secretary of the Commonwealth as statutory agent for Service of Process. The Secretary of the Commonwealth's ONLY responsibility is to mail, by certified mail, return receipt requested, the enclosed papers to you. If you have any questions concerning these documents, you may wish to seek advice from a lawyer.
SERVICE OF PROCESS IS EFFECTIVE ON THE DATE WHEN SERVICE IS MADE ON THE SECRETARY OF THE COMMONWEALTH.

**CERTIFICATE OF COMPLIANCE**

I, the undersigned, Clerk in the Office of the Secretary of the Commonwealth, hereby certify the following:

1. On .......... MAY 0 9 2022 .........., legal service in the above-styled case was made upon the Secretary of the Commonwealth, as statutory agent for persons to be served in accordance with Section 8.01-329 of the Code of Virginia, as amended.

2. On .......... MAY 1 1 2022 .........., papers described in the Affidavit and a copy of this Affidavit were forwarded by certified mail, return receipt requested, to the party designated to be served with process in the Affidavit.

.............................................
SERVICE OF PROCESS CLERK, DESIGNATED
BY THE AUTHORITY OF THE SECRETARY OF THE COMMONWEALTH

FORM CC-1418 (MASTER, PAGE ONE OF TWO) 07/13

# COMMONWEALTH OF VIRGINIA



PORTSMOUTH CIRCUIT COURT
Civil Division
1345 COURT STREET
PORTSMOUTH  VA
(757) 393-8671

Summons

To: PACE-O-MATIC, INC.
SECRETARY OF THE COMMONWEALTH
STATUTORY AGENT
3450 CORPORATE WAY, SUITE A
DULUTH GA 30096

Case No.  740CL22001902-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Monday, April 25, 2022

Clerk of Court:  CYNTHIA P. MORRISON

by  _Susan R Neisooli_____
(CLERK/DEPUTY CLERK )

Instructions:

Hearing Official:

Attorney's name:     SLAVEN, RONALD D; JR

# VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF PORTSMOUTH

**David J. Bond, Administrator of the Estate of Yvonne Miller, Deceased,**

**PLAINTIFF**

    v.                                     Case No.: _____

## Queen of Virginia Skill & Entertainment, LLC
A Virginia Limited Liability Company

    **SERVE:**

    Guy M. Harbert III, Esquire, Registered Agent

    10 Franklin Rd SE.

    Suite 900

    Roanoke, VA. 24011

and

## POM of Virginia, LLC
A Virginia Limited Liability Company

    **SERVE:**

    Guy M. Harbert III, Esquire, Registered Agent

    10 Franklin Rd SE.

    Suite 900

    Roanoke, VA. 2401

and

## Pace-O-Matic, Inc.
A Wyoming Stock Corporation

**SERVE:**

Secretary of Commonwealth, Statutory Agent

(pursuant to § 8.01-301(3) and § 8.01-329)

[Address of defendant:

3450 Corporate Way, Suite A

Duluth, GA 30096]

**DEFENDANTS**

## COMPLAINT

**COMES NOW** the Plaintiff, David J. Bond, as Administrator for the Estate of Yvonne Miller, Deceased, and moves this Court for judgment against the Defendants, Queen of Virginia Skill & Entertainment, LLC, POM of Virginia, LLC, and Pace-O-Matic, Inc., jointly and severally, and in support thereof states as follows:

## JURISDICTION AND VENUE

1. Jurisdiction is proper in the Circuit Court of the City of Portsmouth pursuant to §17.1-513 of the Code of Virginia 1950, as amended.

2. Venue is proper in the Circuit Court of the City of Portsmouth where the cause of action arose pursuant to §8.01-262, Code of Virginia 1950, as amended.

3. Yvonne Miller hereinafter referred to as "Sen. Miller", passed away on or about July 3, 2012.

4. David J. Bond qualified as the personal representative for the Estate of Yvonne Miller in the Norfolk Circuit Court on July 17, 2012.

5. At all relevant times the Estate of Yvonne Miller ("Plaintiff") is a probated estate in Norfolk, Virginia.

6. Queen of Virginia Skill & Entertainment, LLC ("Defendant Queen of Virginia") was at all times

relevant hereto a business entity registered as doing business in Virginia.

7.    At all relevant times Defendant Queen of Virginia was a corporation doing business in Virginia.

8.    Defendant Queen of Virginia was, at the time of the facts set forth herein, conducting business at various locations throughout the Commonwealth of Virginia, including, in addition to other places, Portsmouth, VA.

9.    POM of Virginia, LLC ("Defendant POM") was, at all times relevant hereto, a business entity registered as doing business in Virginia

10.    Defendant POM was, at the time of the facts set forth herein, conducting business at various locations throughout the Commonwealth of Virginia, including, in addition to other places, Portsmouth, VA.

11.    At all relevant times Defendant POM was a corporation doing business in Virginia.

12.    Pace-O-Matic, Inc. ("Defendant Pace-O-Matic") was, at the time of the facts set forth herein, conducting business within the Commonwealth of Virginia, including, in addition to other places, Portsmouth, VA.

13.    Defendant Pace-O-Matic is not a business entity registered as doing business in Virginia but is subject to jurisdiction within the Commonwealth pursuant to § 8.01-328.1 of the Code of Virginia, 1950, as amended.

## FACTS COMMON TO ALL COUNTS

14.    The Defendants produced, published and circulated a flyer to enhance its business and sway members of the Virginia General Assembly to vote in behalf of Defendants' legislative goals to procure profits, a copy of said flyer (flyer) is incorporated and attached hereto as Exhibit A.

15.    The flyer was also sent to statewide media which prompted the publishing of a news article referencing the flyer by the *Virginia Mercury* on March 16, 2021, said article being incorporated

and attached hereto as Exhibit B (see page 3 of 5).

16.     The flyer claimed and implied that anticipated tax proceeds garnered by the State as a result of adopting favorable legislation in Defendants' behalf were also benefiting the "Yvonne B. Miller/Ben Chafin College Scholarship Fund" ("The Fund")

17.     The flyer contained the name, image and likeness of Sen. Miller.

18.     The flyer expressly claimed and implied that the scholarship promoted by the Defendants in behalf of Sen. Miller's estate, heirs, reputation and legacy, would provide an education to recipients so that those students would graduate with: *"No worries about utility bills, No fear of going hungry, No debt to repay"* and the flyer also averred that the scholarship *"will be the first program of its kind of America".*

19.     In a clever ruse the Defendants also stated: *"By continuing to collect skill game tax revenue for one more year, 'we' can help up to 10,000 Virginians pursue degrees at community college or a state supported university and be focused on their books, not on how to pay day-to-day expenses. The result? More graduates, tax-paying residents and stable families".* (emphasis added)

20.     These false promises set forth by the Defendants' flyer could reasonably be assumed by the public and potential recipients of the scholarship that all costs will be paid by or through Sen. Miller and Sen. Chafin, or their estates, because there are no other names on the flyer.

21.     The word **"we"** is all-encompassing and Defendants specifically and knowingly used that word to create misinformation and project credibility in their quest for financial and political goals at the expense of Sen. Miller's name, photograph, reputation and legacy.

22.     In fact, anyone wishing to donate funds to the scholarship or apply for the alleged scholarship program literally had no way to contact the Defendants and this purposeful anonymity was part of the Defendants' fraudulent scheme to mislead and sway the public, the media, potential recipients,

members of the Virginia General Assembly and the Governor.

23.    Literally, the flyer did not name the Defendants as the promoters of the flyer, did not guide

potential donors and scholarship applicants as to the process for donating to or benefitting from

the scholarship fund, nor did the Defendants post any scholarship fund address, phone number,

website, email contact information, Facebook page, address or any digital or physical way to

contact the alleged scholarship program mangers and promoters.

24.    Moreover, the Defendants' representatives have falsely denied that they had anything to do with

the creation and distribution of the flyer.

25.    As a result of the aforesaid unlawful, fraudulent and misleading conduct, the Defendants expressly

and constructively claimed and implied that Sen. Miller, or her estate, endorsed the legislation they

sought and, by reference, that Sen. Miller or her estate were guaranteeing the aforesaid promises

regarding no utility bills, not going hungry and not incurring any debt.

26.    The Defendants used the photographs, name, image, and likeness of Sen. Miller on the flyer

without Sen. Miller's or her Estate's permission.

27.    The Plaintiff never gave Defendants, or anyone associated with the business of the Defendants,

permission to use or publicize Sen. Miller's picture, name, or likeness, much less being potentially

seen as a guarantor of the aforesaid promises to under-served students.

28.    Upon information and belief, the flyer was provided to members of the Virginia General Assembly

and the Governor on or about December, 2020, though August, 2021, by the Defendants, their

employees, agents and lobbyists.

29.    The flyer was distributed digitally and in paper format to members of the Virginia General

Assembly and Governor Ralph Northam for the purposes of trade and to advertise the alleged

scholarship services to entice those who viewed the flyer into promoting the profitable business

of, and legislation favorable to, the Defendants.

30.   The purpose of the flyer was for commercial marketing, advertising, and trade purposes to benefit the Defendants professionally, politically, and financially.

31.   Upon information and belief, the flyer and/or website displaying same was custom designed, developed and maintained exclusively by and/or for Defendant Queen of Virginia and/or Defendant POM and/or Defendant Pace-O-Matic under the direction of Defendant Queen of Virginia and/or Defendant POM and/or Defendant Pace-O-Matic.

32.   Sen. Miller's photograph, name, and likeness were placed on the flyer by the Defendants knowingly and intentionally without the consent of the Plaintiff and in violation of §8.01-40 Code of Virginia 1950, as amended, thereby entitling the Plaintiff to compensatory and punitive damages.

33.   From approximately December, 2020, forward, the Defendants jointly, continuously, knowingly and without the written consent or authorization of the Plaintiff and contrary to and in direct violation of the Plaintiff's rights and fiduciary obligations and authority, used Sen. Miller's name, photograph, likeness, reputation and legacy for commercial trade, advertising, marketing and political purposes.

34.   Due to the nature of distribution of the flyer to the World Wide Web, Sen. Miller's photograph, name and likeness have been continuously reviewable globally since posting on the web resulting in unauthorized global publication.

35.   That at all relevant times, such cached versions of Sen. Miller s photographs are maintained by many servers, websites, hops, and search engines on the World Wide Web.

36.   That in or about August of 2021, Plaintiff discovered the Defendants' jointly unauthorized use of Sen. Miller's photograph, name and likeness.

37.    As a result of the aforesaid jointly coordinated unlawful acts, Defendants have been unjustly enriched by unlawful, fraudulent and unauthorized use of the Sen. Miller's name, photograph, likeness, reputation and legacy.

## COUNT I
### (All Defendants)
### Violation of §8.01-40, Code of Virginia, 1950 as amended,
### Unauthorized use of Photographs
### (All Defendants)

38.    Plaintiff repeats every allegation contained in Paragraphs 1 through 37 as if fully set forth herein.

39.    The Defendants jointly published the name, photograph, and likeness of Sen. Miller on their flyer for commercial use without the written consent and/or authorization of the Plaintiff in violation of §8.01-40, Code of Virginia, 1950 as amended.

40.    The Defendants jointly published Sen. Miller's name, photograph, and likeness on the flyer in order to demonstrate and bolster their political credibility in order to obtain support from the Virginia legislature and to entice the public at large to purchase their gambling services.

41.    The purpose of the flyer is, and was, for commercial marketing, advertising, and trade purposes to benefit the Defendants jointly, professionally, politically, and financially.

42.    The use of the flyer for commercial marketing, advertising, and trade purposes greatly harmed the reputation, legacy, memory, and status of the Plaintiff.

43.    Defendant Queen of Virginia is vicariously liable for the negligent and wrongful acts of its lobbyists, employees, agents, officers, members, and/or directors who were, at all relevant times, acting within the scope of their employment.

44.    Defendant POM is vicariously liable for the negligent and wrongful acts of its lobbyists, employees, agents, officers, members, and/or directors who were, at all relevant times, acting within the scope of their employment.

45.   Defendant Pace-O-Matic is vicariously liable for the negligent and wrongful acts of its lobbyists, employees, agents, officers, members, and/or directors who were, at all relevant times, acting within the scope of their employment.

46.   As a direct and proximate result of the Defendants' aforesaid acts in violation of the duty imposed upon them by Va. Code Ann. §8.01-40, the Plaintiff has been, is now, and will continue to suffer exposure to public ridicule and otherwise injured as set forth herein.

47.   As a result of the Defendants' misappropriated use of the name, photograph, and likeness of Sen. Miller, which are still available for viewing on the World Wide Web, Plaintiff's damages continue to accrue, and will continue to accrue, for an indeterminate period.

48.   The name, photograph and likeness of Sen. Miller were placed on the flyer by the Defendants knowingly and intentionally without the consent of the Plaintiff and in violation of Va. Code Ann. §8.01-40 Code of Virginia 1950, as amended thereby entitling the Plaintiff to compensatory and punitive damages.

**WHEREFORE** for the violation of Va. Code Ann. §8.01-40 by the Defendants and for the damages directly and proximately caused, the Plaintiff prays that judgment be entered against the Defendant Queen of Virginia, Defendant POM and Defendant Pace-O-Matic, jointly and severally, in the amount of $350,000.00 for compensatory damages and $350,000.00 for punitive damages, injunctive relief and prejudgment interest from the first date the flyer was distributed at the statutory rate of interest and for such other relief as this Court deems appropriate.

**COUNT II**
**Unjust Enrichment**
**(All Defendants)**

49.   Plaintiff repeats each allegation contained in Paragraphs 1 through 48 as if fully set forth herein.

50.   From approximately December, 2020, and beyond, the Defendants jointly and severally, continuously, knowingly and without the written consent or authorization of the Plaintiff and contrary to and in direct violation of the Plaintiff's rights, used Sen. Miller's name, photograph, likeness, good reputation and legacy for commercial advertising, trade, marketing and political purposes.

51.   That at all times relevant hereto the Defendants' aforesaid unauthorized uses have benefited the Defendants monetarily.

52.   That the Defendants intended to unlawfully benefit from the good will and reputation of Sen. Miller.

53.   As a direct and proximate result, the Defendants have been unjustly enriched.

54.   The Defendants have received and retained the benefits conferred upon them by their illegal actions stated above that renders it inequitable for the Defendants to retain the benefit without paying for its value.

55.   Therefore, equity and good conscience require restitution to the Plaintiff for the monetary benefit unjustly conferred upon the Defendants.

**WHEREFORE,** as a result of the monetary benefit conferred on the Defendants and unjustly retained by the Defendants, the Plaintiff prays that judgment be entered against the Defendants, jointly and severally, in the amount of $350,000.00 for compensatory damages and prejudgment interest from the first date the name, photograph and likeness of the Plaintiff were distributed or posted on any website at the statutory rate of interest and for such other relief as this Court deems appropriate.

## COUNT III
### Conversion (All Defendants)

56.   Plaintiff repeats every allegation contained in Paragraphs 1 through 55 as if fully set forth herein.

57.    A person holds a proprietary right to their name and likeness.

58.    The Defendants converted the likeness of Sen. Miller, in the form of photographs, without Plaintiff's consent, using her name and likeness as their own and wrongfully exercising dominion and control over them.

59.    The Defendants as principals and/or employees are liable for conversion committed by them or their agents while they are acting within the scope of their employment, while they were engaged in their employer's business and with a view to further their employer's interest.

60.    The Defendants acted with a conscious disregard for the property rights of Plaintiff, thereby entitling the Plaintiff to compensatory and punitive damages.

**WHEREFORE,** the Plaintiff prays that judgment be entered against the Defendants, jointly and severally, in the amount of $350,000.00 for compensatory damages and $350,000.00 for punitive damages and prejudgment interest from the first date the flyers were distributed, or images posted on any website, at the statutory rate of interest and for such other relief as this Court deems appropriate.

## COUNT IV
### Defamation (All Defendants)

61.    Plaintiff repeats every allegation contained in Paragraphs 1 through 60 as if fully set forth herein.

62.    The Defendants have by necessary implication in the flyers aforesaid made false representations of fact about Plaintiff.

63.    The implied representations are that Sen. Miller's estate and/or family and heirs were supportive of Defendants' business and policy stance and were joining with Defendants to advocate for their business or had given their consent to be associated with such business.

64.    The aforementioned representations are false.

65.    The aforementioned representations were made maliciously, in a nefarious attempt to coopt Sen.

Miller's goodwill and legacy to support Defendants' own political and business ends.

66.  In the alternative, the Defendants made these representations so recklessly as to amount to a total disregard for the truth.

67.  The aforementioned representations have caused damage to the reputation, memory and legacy of Sen. Miller and has caused anger, humiliation and embarrassment among her heirs and family members.

68.  Through their sham efforts – distributing the flyer without permission, without stating any sources of permission, without stating any contact information for readers to donate to or benefit from the fake scholarship – Defendants have cloaked Sen. Miller's name, photograph, likeness, reputation and legacy with a false penumbra. The same has defrauded the public, the Virginia General Assembly and the Governor of Virginia into believing that the Estate of Sen. Miller was promoting the Defendants' efforts to change Virginia law for the economic benefit of the Defendants and at the same time defrauding the Estate of its only lasting assets which are the name, photograph, likeness, good reputation and legacy of Sen. Miller.

**WHEREFORE** the Plaintiff prays that judgment be entered against the Defendants, jointly and severally, in the amount of $1,000,000.00 for compensatory damages and $350,000.00 as punitive damages and prejudgment interest from the first date the flyers were distributed, or images posted on any website, at the statutory rate of interest and for such other relief as this Court deems appropriate.

The Plaintiff demands trial by jury.

David J. Bond, Administrator of the Estate of Yvonne Miller, Deceased

By: _____

Of Counsel

Frank Kilgore, Esq. (VSB#: 21434)
FRANK KILGORE, P.C.
P. O. Drawer 1210
St. Paul, Virginia  24283
Telephone:  (276) 762-2201
Fax:  (276) 762-5593
frank@fkilgore.net
Counsel for David J. Bond, Administrator of the Estate of Yvonne Miller, Deceased.

Ronald D. Slaven, Jr., Esq. (VSB#: 79741)
SLAVEN LAW GROUP, P.C.
308 George Washington Hwy N, Suite 1
Chesapeake, Virginia 23323
T: (757) 547-8080
F: (757) 482-8662
ronald@slavenlawgroup.com
Counsel for David J. Bond, Administrator of the Estate of Yvonne Miller, Deceased.



## G3 IS GREAT.

*NOW,* Let's Make It **BIGGER, BOLDER** and **BETTER**
For Virginia's Most Financially Challenged Students

**We did it!** We passed G3 to help low income students afford not just tuition and fees at community colleges but also basic necessities like **food, rent and utility bills.**

**But we CAN DO MUCH MORE!** Virginia can lead the nation by creating fully funded scholarships that cover tuition, fees and all living expenses, including childcare, for up to 10,000 students, at the community college or state university level, who live below the federal poverty line.

ANNOUNCING THE

## YVONNE B. MILLER/ BEN CHAFIN COLLEGE SCHOLARSHIP FUND

This program honors a pair of late legislative legends - one from the east, one from the west, one Democrat, one Republican and both believers in the value of higher education. Let's make sure our most vulnerable Virginians can go to college, stay in college and graduate from college with:

- **No worries about utility bills**
- **No fear of going hungry**
- **No debt to repay**

**THE MILLER/CHAFIN COLLEGE SCHOLARSHIP FUND:**

- Is only for students with incomes below the federal poverty line
- Pays for ALL academic and living expenses, as long as students make academic progress
- Will be the first program of its kind in America and will demonstrate that Virginia cares about ALL its citizens and recognizes the FULL value of a college education, including those who have suffered too long from historic socio-economic inequality

**And, who better to honor than two of our own:**



**Norfolk's Yvonne B. Miller,** a career educator, a professor of early childhood education at Norfolk State University and a legislator in the House of Delegates (1984-88) and the State Senate (1988-2012).



**Russell County's Ben Chafin,** a distinguished attorney and beef cattle farmer, who served in the House (2013-2014) and Senate (2014-2020). Ben and his sister were the first in the Chafin family to go to college.

**AND THE BEST NEWS OF ALL?** Virginia can fully fund the Miller/Chafin Scholarship program NOW!

By continuing to collect skill game tax revenue for one more year, we can help up to 10,000 Virginians pursue degrees at a community college or a state supported university and be focused on their books, not on how to pay day-to-day expenses. The result? More graduates, tax paying residents and stable families.

**And they won't be the only winners because skill game revenue is the difference between hope and failure during the pandemic for the owners of thousands of family run small businesses.**



**THE YVONNE MILLER/BEN CHAFIN COLLEGE SCHOLARSHIP FUND**
**"LET'S FINISH THE JOB THAT G-3 STARTS"**

PLAINTIFF'S
EXHIBIT

A



- HOME
- NEWS
  - GENERAL ASSEMBLY 2022
  - CRIMINAL JUSTICE + POLICING
  - ENERGY + ENVIRONMENT
  - GOV + POLITICS
  - EDUCATION
  - HEALTH
- COMMENTARY
- ABOUT
- SUBSCRIBE
- DONATE

- GENERAL ASSEMBLY 2022
- CRIMINAL JUSTICE + POLICING
- ENERGY + ENVIRONMENT
- GOV + POLITICS
- EDUCATION
- HEALTH

  GENERAL ASSEMBLY 2021
  HOUSING, WORKING & BUSINESS

**PLAINTIFF'S EXHIBIT**

_B_

# Did Virginia lawmakers accidentally vote to legalize skill games for another year?

By: Graham Moomaw - March 16, 2021 12:01 pm



Skill games in a Richmond corner store. The games popped up in gas stations, convenience stores and bars around the state before they were outlawed. (Ned Oliver/Virginia Mercury)

After giving so-called skill games another year to operate in Virginia late in the 2020 General Assembly session, legislators seemed to decide the time has come to pull the plug on thousands of slots-like gambling machines that have proliferated in convenience stores, restaurants and truck stops all over the state.

But some statehouse watchers think lawmakers may have actually voted to do the opposite.

4/14/22, 4:15 PM                      Did Virginia lawmakers accidentally vote to legalize skill games for another year? - Virginia Mercury

Confusion recently spread among gambling lobbyists over a little-noticed provision attached to a bill that, on its face, makes it easier for officials to crack down on unregulated gambling.

That language, included at the end of a conference report lawmakers approved overwhelmingly last month in the closing days of the session, appears to create an exception for operators of charitable games like bingo, raffles and poker tournaments, specifying that some activity potentially impacted by the bill can continue until June 30, 2022.

The clause also covers other "regulated gaming" in existence as of February, a category that, if interpreted to mean skill games, could give the industry another year of life.

Because the bill was never explained as potentially sanctioning skill games for another year, some are suspicious the amendment was a ploy by a well-lobbied industry to slip something past policymakers.

In an interview, Del. Don Scott, D-Portsmouth, the bill's patron, said that wasn't the goal of the clause in question. But he too seemed uncertain about its ramifications.

"The way that I constructed the language was in consultation with a lot of charitable people. And that was my intent to make sure they would not be impacted," Scott said Friday. "If people are interpreting it another way, that's on them."

Scott said he doesn't think lawmakers should be in the business of "picking winners and losers."

"I look forward to it being worked out," Scott said. "That's why the governor is the final word."

Gov. Ralph Northam's administration, now in the process of signing and going over bills passed in the 2021 session, has said it wants the games banned. In a statement this week, Northam's office hinted that it too sees the bill as potentially broader than publicly advertised.

"Governor Northam expects skill games to end as of July 1, 2021. That has been his consistent position, and it hasn't changed," said Northam spokeswoman Alena Yarmosky. "The governor's action on this legislation will reflect that stance."

A bill to give skill games another extension failed in the House of Delegates without a committee vote. Representatives for the skill-game industry did not respond to multiple inquiries from the Mercury seeking their interpretation of whether the bill would extend their operations past July 1.

Tom Lisk, a lobbyist for prominent skill-game operator Queen of Virginia, deferred comment to a company spokesman who did not respond to an email and a phone call. Clark Lewis, a lobbyist listed as the point of contact for the Virginia Skill Alliance industry group, also did not respond to requests for comment.

Eleven lobbyists have been retained by Queen of Virginia, according to the Virginia Public Access Project.

The skill-game industry entered Virginia in a legal gray area, with officials taking differing views on whether they should be classified as illegal gambling machines or arcade-style games that have just enough of a skill component to avoid the random chance of traditional slot machines.

Though it began with little to no rules and no gambling taxes assessed on its machines, the industry sought legislation creating a formal regulatory structure allowing it to continue. In the 2020 session, policymakers decided to allow the machines to remain in place temporarily to generate revenue for a COVID-19 relief fund.

Skill game companies and their affiliates launched a public advocacy campaign trying to convince lawmakers to let the machines stay, enlisting some officials and business owners to tout the revenue they generate as too valuable to give up. The advocacy group Virginia Skill Alliance estimates the machines could produce up to $140 million in tax revenues and coronavirus relief money over 12 months.

Much of that advocacy now seems to be happening behind the scenes, some of it seemingly aimed at convincing the governor to get on board.

A recent flier obtained by the Mercury seeks to connect skill games to Northam's signature G3 plan for tuition-free community college, suggesting another year of revenue from the machines could fund a scholarship program named in honor of the late state Sens. Ben Chafin and Yvonne Miller. The flier describes skill game revenue as "the difference between hope and failure during the pandemic for the owners of thousands of family-run small businesses."

With Virginia greenlighting casinos, sports betting and expanded horse race gambling in recent years, supporters of the skill machines argue they give small business owners a slice of an industry dominated by bigger companies.

Skill-game critics argue the industry, which donates to politicians on both sides of the aisle, exploited legal loopholes to rush in as Virginia was just starting to consider relaxing its gambling laws, rolling out machines that initially operated with no state oversight as to where they were being installed or how much money was flowing through them.

Despite the regulatory structure in place, there have been several reports of machines still operating outside of state rules and the appearance of mini-casinos where the machines themselves are the main draw.

That's what the illegal gambling bill the legislature passed was supposed to address. It empowers the attorney general's office, prosecutors and local government attorneys to go after unregulated gambling machines. Violators could face fines of up to $25,000 for each illegal machine.

In an interview, Sen. Bryce Reeves, R-Spotsylvania, who sponsored a version of the bill in the Senate and served on the legislative panel that finalized the proposal, said he wasn't aware of any covert attempt to legalize skill games. Even if skill games are banned under the timeline envisioned by Northam, Reeves said the problem of unregulated machines will continue.

"The illegal stuff's going to come right back in," Reeves said.

Northam's deadline to act on the bill is March 31.

Creative Commons License
Republish

Our stories may be republished online or in print under Creative Commons license CC BY-NC-ND 4.0. We ask that you edit only for style or to shorten, provide proper attribution and link to our web site. Please see our republishing guidelines for use of photos and graphics.

Graham Moomaw

Graham Moomaw

4/14/22, 4:15 PM                    Did Virginia lawmakers accidentally vote to legalize skill games for another year? - Virginia Mercury

A veteran Virginia politics reporter, Graham grew up in Hillsville and Lynchburg, graduating from James Madison University and earning a master's degree in journalism from the University of Maryland. Before joining the Mercury in 2019, he spent six years at the Richmond Times-Dispatch, most of that time covering the governor's office, the General Assembly and state politics. He also covered city hall and politics at The Daily Progress in Charlottesville. Contact him at gmoomaw@virginiamercury.com

MORE FROM AUTHOR

Related News



Virginia doesn't have licensed poker rooms. A state... by Graham Moomaw September 28, 2021



Lobbyists load Va. lawmakers onto private jet to... by Ned Oliver July 22, 2021



Across cultural lines, home schooling has boomed... by Jeff South January 3, 2022

4/14/22, 4:15 PM                    Did Virginia lawmakers accidentally vote to legalize skill games for another year? - Virginia Mercury

A new look at the Old Dominion

Democracy Toolkit //

Register to vote | Find your polling place | Who represents me?

    DEMOCRACY TOOLKIT



© Virginia Mercury, 2022

ABOUT US

Nonprofit. Nonpartisan. No paywalls. Fair and tough reporting on the policy and politics that affect all of us is more important than ever. The Mercury brings you coverage of the commonwealth's biggest issues from a team of veteran Virginia journalists.

Ethics Policy | Privacy Policy

Our stories may be republished online or in print under Creative Commons license CC BY-NC-ND 4.0. We ask that you edit only for style or to shorten, provide proper attribution and link to our web site.

Ethics Policy | Privacy Policy
© Virginia Mercury, 2022